ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| MASTER ROOFING, INC.<br><br>Recurrente<br><br>v.<br><br>JUNTA DE SUBASTAS DEL MUNICIPIO AUTÓNOMO DE SAN JUAN; MUNICIPIO AUTÓNOMO DE SAN JUAN<br><br>Recurridos<br><br>ALL GREEN CLEANING & MAINTENANCE, LLC<br><br>Proponente Agraciado<br><br>PERFECT INTEGRATED SOLUTIONS, INC.; REYES CONTRACTOR GROUP, INC.<br><br>Otros Proponentes | KLRA202400282 | *Revisión* procedente de la Junta de Subastas del Municipio de San Juan<br><br>Subasta Núm.: 2024-009<br><br>Sobre: Impugnación de Adjudicación de Subasta |

Panel integrado por su presidente, la Jueza Rivera Marchand[1], la Jueza Romero García y la Jueza Martínez Cordero.

*Martínez Cordero, jueza ponente*

### SENTENCIA

En San Juan, Puerto Rico, a 12 de julio de 2024.

Comparece Master Roofing, Inc. (en adelante, Master Roofing o parte recurrente) mediante un recurso de revisión judicial en el cual nos solicita que revisemos la *Determinación Final* de la Subasta Número 2024-009 (Subasta), emitida y notificada, el 21 de mayo de 2024, por la Junta de Subastas del Municipio de San Juan (en adelante, Junta de Subastas o parte recurrida).[2] Mediante la referida subasta, se le adjudicó la *buena pro* a All Green Cleaning & Maintenance, LLC (en adelante, All Green o proponente agraciado).

---

[1] Véase, la Orden Administrativa OATA-2024-067 del 10 de junio de 2024, en la que se designa a la Hon. Monsita Rivera Marchand para entender y votar en el recurso de epígrafe, debido a la inhibición del Hon. Juan Hernández Sánchez.
[2] Apéndice del recurso, a las págs. 1-12.

Número Identificador

SEN2024_____

Por los fundamentos que expondremos, se *confirma* la *Determinación Final* recurrida mediante la cual se adjudicó la Subasta.

I

Surge del expediente que, el 21 de agosto de 2023, el Municipio de San Juan (Municipio) publicó en el periódico el Nuevo Día el aviso público para la Subasta que nos ocupa, para la impermeabilización de los techos del Centro de Diagnóstico y Tratamiento José S. Belaval los cuales sufrieron daños por el Huracán María. En el aviso, se indicó que la fecha de apertura de la Subasta sería el 15 de septiembre de 2023. Sin embargo, la referida fecha fue enmendada mediante el *addendum* #2, de manera que el acto de apertura se celebró el 26 de septiembre de 2023. Al mismo, comparecieron los siguientes cuatro (4) licitadores: (i) Master Roofing; (ii) All Green; (iii) Perfect Integrated Solutions, Inc.; y (iv) Reyes Contractor Group, Inc.[3]

Luego de que se realizara las evaluaciones pertinentes, el 9 de enero de 2024, la Junta de Subastas otorgó la *buena pro* al postor All Green.[4] Aunque Master Roofing presentó una oferta más baja, fue descalificado por, presuntamente, incumplir con los requisitos mínimos de elegibilidad. Ello, al presentar una fianza de licitación de una compañía fiadora con una calificación de B+, cuando se exigió en los pliegos de la Subasta una calificación mínima de A-.

En desacuerdo, el 16 de enero de 2024, Master Roofing, solicitó a la Junta de Subastas que reconsiderara su determinación.[5] En el escrito, sostuvo que su descalificación se basó en un hecho incorrecto, puesto que, según AM Best Rating Services Inc., su compañía fiadora contaba con una calificación de A-. Por

---

[3] Apéndice del recurso, a las págs. 1-2.
[4] *Íd.,* a las págs. 439-450.
[5] *Íd.*, a las págs. 451-462.

otra parte, alegó que el proponente agraciado incumplió con varios de los requerimientos esbozados en las Instrucciones a Licitadores. Esencialmente, acentuó que All Green no firmó la hoja de invitación, proposición y aceptación, ni demostró que tenía experiencia en trabajos de sellado de techos. Sobre esto último, detalló que las Instrucciones a Licitadores requerían como mínimo tres (3) años de experiencia en la industria de construcción, y dos (2) proyectos similares en tipo, complejidad y alcance. Además, indicó que el proponente agraciado no sometió la información financiera requerida, dado a que no presentó uno (1) estados financieros solicitados. En virtud de lo expuesto, peticionó que se dejara sin efecto la *Determinación Final* de la Subasta.

Evaluado lo anterior, el 18 de enero de 2024, la Junta de Subastas emitió un escrito intitulado *Notificación de determinación sobre solicitud de reconsideración de la Subasta.*[6] En el mismo, acogió la solicitud de reconsideración presentada por Master Roofing y determinó cancelar la adjudicación de la Subasta. Ello, luego de concluir que erró en descalificar a la parte recurrente. A tales efectos, la Junta de Subastas detalló que procedería a evaluar la oferta presentada por Master Roofing en su totalidad, para que esta fuera comparada con las otras propuestas presentadas.

Subsiguientemente, el 12 de abril de 2024, el Departamento de Diseño Urbano y Desarrollo de Proyectos (Departamento) envió a los licitadores una *Solicitud de aclaración de información presentada con las ofertas de la Subasta.*[7] En el escrito, el aludido Departamento, específicamente, solicitó a la parte recurrente que entregara sus "dos (2) últimos [e]stados [f]inancieros revisados o auditados", y a All Green le requirió "el [e]stado [f]inanciero revisado

---

[6] Apéndice del recurso, a las págs. 463-468.
[7] *Íd.,* a las págs. 469-471.

o auditado, que complet[ara] la entrega de los dos (2) [e]stados [f]inancieros solicitados".[8]

Según se desprende de los autos ante nos, recibida la documentación solicitada, el Departamento evaluó las cuatro (4) ofertas y emitió sus recomendaciones el 1 de mayo de 2024, revisadas el 9 del mismo mes y año. Indicó que, a pesar de que Master Roofing presentó la oferta más baja y cumplió con los requisitos mínimos de la Subasta, luego de que se evaluó la información adicional provista, se encontró que los informes financieros no estaban auditados. A consecuencia de lo anterior, alegadamente, no pudo completar la evaluación financiera de Master Roofing. En virtud de lo anterior, el Departamento recomendó que la Subasta se le otorgará a All Green, quien había presentado la segunda oferta más baja, y, a su juicio, cumplió con los requisitos mínimos y tenía la capacidad financiera para cumplir con las obligaciones del proyecto. En cuanto a Perfect Integrate Solutions Inc., concluyó que, aunque el licitador cumplía con los requisitos mínimos de elegibilidad y podía asumir las obligaciones financieras del proyecto, su oferta estaba veintinueve por ciento (29%) por encima del estimado del costo. De modo, que consideró que la oferta no era razonable. Finalmente, respecto a Reyes Contractor Group Inc., detalló que, a pesar de que el licitador cumplió con los requisitos mínimos de legibilidad, entregó estados financieros incompletos para el año 2022, y su oferta estaba sesenta y nueve por ciento (69%) por encima del estimado del costo. Así, pues, se calificó la oferta como una irrazonablemente alta.[9]

El 21 de mayo 2024, la Junta de Subastas emitió notificación de la *Determinación Final* sobre la Subasta. Mediante la misma,

---

[8] Apéndice del recurso, a la pág. 470. (Énfasis omitido).
[9] Véase, Expediente administrativo, Recomendaciones del Departamento revisadas, con fecha del 9 de mayo de 2024, a las págs. 1-10.

acogió la recomendación del Departamento y adjudicó la *buena pro* de la Subasta a All Green.[10]

Insatisfecho, el 31 de mayo de 2024, compareció Master Roofing ante esta Curia mediante un recurso de *Revisión,* en el cual señaló la comisión de los siguientes tres (3) errores:

> PRIMER ERROR: ERRÓ LA JUNTA DE SUBASTAS DEL MUNICIPIO AUTÓNOMO DE SAN JUAN AL EXCLUIR ARBITRARIA Y CAPRICHOSAMENTE, Y EN PERJUICIO DEL MÁS ALTO INTERÉS PÚBLICO, A MASTER ROOFING, INC. DE LA BUENA PRO CUANDO FUE EL POSTOR MÁS BAJO Y DE MÁS EXPERIENCIA EN LOS SERVICIOS OBJETO DE LA SUBASTA.
>
> SEGUNDO ERROR: ERRÓ LA JUNTA DE SUBASTAS DEL MUNICIPIO AUTÓNOMO DE SAN JUAN AL ADJUDICAR ARBITRARIA Y CAPRICHOSAMENTE, Y EN PERJUICIO DEL MÁS ALTO INTERÉS PÚBLICO, LA BUENA PRO DE LA SUBASTA A UN POSTOR -ALL GREEN MAINTENANCE- CON NINGUNA EXPERIENCIA EN LA IMPERMEABILIZACIÓN DE TECHOS.
>
> TERCER ERROR: ERRÓ LA JUNTA DE SUBASTAS DEL MUNICIPIO AUTÓNOMO DE SAN JUAN AL CONCLUIR QUE NO PUDO ANALIZAR LA CAPACIDAD FINANCIERA DE MASTER ROOFING PORQUE TENÍA SOLO INFORMES FINANCIEROS COMPILADOS CUANDO CONTABA CON MÁS DE UN MILLÓN DE DÓLARES EN LÍNEAS DE CRÉDITO.

Mediante *Resolución* emitida por este Tribunal el 4 de junio de 2024, concedimos a la parte recurrente hasta el 11 de junio de 2024 para acreditar haber notificado a las partes y a la agencia recurrida conforme a la Regla 58 del Reglamento de este Tribunal de Apelaciones.[11] Además, mediante *Resolución* del 11 de junio de 2024, concedimos un término adicional, hasta el 17 de junio de 2024 a las 2:00 p.m., a la Junta de Subastas para remitirnos copia certificada del expediente administrativo de la Subasta. De otra parte, concedimos a la parte recurrida hasta el 1 de julio de 2024 para presentar su alegato en oposición al recurso.

El 4 de junio de 2024, el recurrente presentó *Moción informando notificación de recurso de revisión judicial.* En su escrito

---

[10] Apéndice del recurso, a las págs. 1-12.
[11] 4 LPRA Ap. XXII-B, R. 58.

acreditó el cumplimiento con nuestra *Resolución* del 4 de junio de 2023. De igual forma actuó la Junta de Subastas al presentarnos copia certificada del expediente administrativo de la Subasta en cuestión. Por otro lado, el 18 de junio de 2024, el Municipio Autónomo de San Juan y su Junta de Subastas presentó su *Alegato en Oposición.* Habiendo quedado el recurso perfeccionado para su adjudicación final, procederemos a exponer el derecho aplicable.

II

### A. Revisión Judicial

El Tribunal Supremo de Puerto Rico (en adelante, Tribunal Supremo) ha sostenido que, el derecho a cuestionar la determinación de una agencia mediante revisión judicial es parte del debido proceso de ley protegido por la Constitución de Puerto Rico.[12] El artículo 4.006 (c) de la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico[13] otorga la competencia apelativa al Tribunal de Apelaciones para revisar las decisiones, órdenes y resoluciones finales de las agencias administrativas.[14] La revisión judicial de las decisiones administrativas tiene como fin delimitar la discreción de los organismos administrativos, para asegurar que ejerzan sus funciones conforme la ley y de forma razonable.[15] Esta doctrina dispone que corresponde a los tribunales examinar si las decisiones de las agencias administrativas fueron tomadas dentro de los poderes delegados y si son compatibles con la política pública que las origina.[16] A esos efectos, la revisión judicial comprende tres (3) aspectos: (i) la concesión del remedio apropiado; (ii) la revisión de las determinaciones de hecho conforme al criterio de evidencia sustancial; y, (iii) la revisión completa de las conclusiones de

---

[12] *Asoc. Condómines v. Meadows Dev.,* 190 DPR 843, 847 (2014); *Picorelli López v. Depto. de Hacienda,* 179 DPR 720, 736 (2010).
[13] Ley Núm. 201-2003 (4 LPRA sec. 24y(c)).
[14] *Asoc. Condómines v. Meadows Dev.,* supra.
[15] *Unlimited v. Mun. de Guaynabo,* 183 DPR 947, 965 (2011); *Empresas Ferré v. ARPe,* 172 DPR 254, 264 (2007).
[16] *Rolón Martínez v. Caldero López,* 201 DPR 26, 35 (2018).

derecho.[17] El Alto Foro ha establecido que el derecho a una notificación adecuada concede a las partes la oportunidad de tomar conocimiento real de la acción tomada por la agencia. Además, otorga a las personas cuyos derechos pudieran quedar afectados, la oportunidad para decidir si ejercen los remedios que la ley les reserva para impugnar la determinación.[18]

Dentro de este marco, nuestro Tribunal Supremo ha reiterado que los tribunales apelativos, al ejercer su función revisora, deben conceder una gran deferencia a las decisiones emitidas por las agencias debido a la vasta experiencia y conocimiento especializado en los asuntos que les han sido encomendados.[19] Por un lado, el Alto Foro ha enfatizado que los tribunales, aplicando el criterio de razonabilidad y deferencia, no alterarán las determinaciones de hechos de las agencias, siempre que surja del expediente administrativo evidencia sustancial que las sustente.[20] Igualmente, las determinaciones de los entes administrativos tienen una presunción de legalidad y corrección que los tribunales deben respetar mientras la parte que las impugna no presente la evidencia suficiente para derrotarlas.[21] A la luz de esto, los tribunales deben ser cautelosos al intervenir con las conclusiones e interpretaciones de los organismos administrativos especializados.[22] Ahora bien, esta deferencia reconocida a las decisiones de las agencias administrativas cede en algunas situaciones: (i) cuando la decisión no esté basada en evidencia sustancial; (ii) cuando la agencia haya errado en la aplicación de la ley; (iii) cuando su actuación resulte

---

[17] *Batista, Nobre v. Jta. Directores*, 185 DPR 206, 217 (2012), citando a *Asoc. Fcias v. Caribe Specialty et al. II*, 179 DPR 923, 940 (2010); *Mun. de. San Juan v. JCA*, 149 DPR 263, 279-280 (1999).
[18] *Asoc. Vec. Altamesa Este v. Municipio de San Juan*, 140 DPR 24 (1996).
[19] *Rolón Martínez v. Caldero López*, supra; *Asoc. Fcias. v. Caribe Specialty et al. II.*, supra.
[20] *Rolón Martínez v. Caldero López, Íd.*; *Asoc. Fcias. v. Caribe Specialty et al. II., Íd.*
[21] *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 892 (2008).
[22] *Íd.*

ser arbitraria, irrazonable o ilegal; y, (iv) cuando la actuación administrativa lesiona derechos constitucionales fundamentales.[23]

El Tribunal Supremo ha establecido que las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el Tribunal, si se basan en evidencia sustancial que surja del expediente administrativo considerado en su totalidad.[24] La evidencia sustancial es "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión".[25] Dicho análisis requiere que la evidencia sea considerada en su totalidad, esto es, tanto la que sostenga la decisión administrativa como la que menoscabe el peso que la agencia le haya conferido.[26] Ello implica que, de existir un conflicto razonable en la prueba, debe respetarse la apreciación de la agencia.[27] Además, la norma de prueba sustancial se sostiene en la premisa de que son las agencias las que producen y determinan los hechos en los procesos administrativos y no los tribunales.[28]

Debido a la presunción de regularidad y corrección de los procedimientos y las decisiones de las agencias administrativas, quien alegue ausencia de evidencia sustancial tendrá que presentar prueba suficiente para derrotar esta presunción, no pudiendo descansar en meras alegaciones.[29] Para ello, deberá demostrar que existe otra prueba en el expediente, que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue

---

[23] *The Sembler Co. v. Mun. de Carolina*, 185 DPR 800, 822 (2012), citando a *Empresas Ferrer v. ARPe*, supra.

[24] *Batista, Nobre v. Jta. Directores*, supra, 216, citando a *Pereira Suárez v. Jta. Dir. Cond.*, 182 DPR 485, 511-512 (2011); *Domínguez v. Caguas Expressway Motors*, 148 DPR 387, 397-398 (1999).

[25] *Íd.*; *Otero v. Toyota*, 163 DPR 716, 728 (2005).

[26] *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.*, 144 DPR 425, 437 (1997).

[27] *Hilton v. Junta de Salario Mínimo*, 74 DPR 670, 687 (1953).

[28] Fernández Quiñones, *Derecho administrativo y Ley de Procedimiento Administrativo Uniforme*, 3ra ed., Colombia, Ed. Forum, 2013.

[29] *OEG v. Martínez Giraud*, 210 DPR 79, 89 (2022); *Graciani Rodríguez v. Garage Isla Verde*, 202 DPR 117, 128 (2019); *González Segarra v. CFSE*, 188 DPR 252, 277 (2013); *Pacheco v. Estancias*, 160 DPR 409, 431 (2003).

razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración.[30] Si la parte afectada no demuestra la existencia de otra prueba que sostenga que la actuación de la agencia no está basada en evidencia sustancial o que reduzca o menoscabe el valor de la evidencia impugnada, el Tribunal respetará las determinaciones de hecho y no sustituirá el criterio de la agencia por el suyo.[31] En cambio, las conclusiones de derecho son revisables en todos sus aspectos.[32] De esta manera, los tribunales, al realizar su función revisora, están compelidos a considerar la especialización y la experiencia de la agencia con respecto a las leyes y reglamentos que administra.[33] Así pues, si el punto de derecho no conlleva interpretación dentro del marco de la especialidad de la agencia, entonces el mismo es revisable sin limitación.[34]

Sin embargo, aun cuando el Tribunal tiene facultad para revisar en todos sus aspectos las conclusiones de derecho de una agencia, se ha establecido que ello no implica que los tribunales revisores tienen la libertad absoluta para descartarlas libremente.[35] Si del análisis realizado se desprende que la interpretación que hace una agencia de su reglamento o de la ley que viene llamada a poner en vigor resulta razonable, el Tribunal debe abstenerse de intervenir.[36]

### B. Subastas Municipales

Los procesos de contratación de servicios por el gobierno central y por los municipios están revestidos del más alto interés público.[37] Por ello, para la adquisición de servicios, ambos entes gubernamentales favorecen los vehículos procesales de la subasta

---

[30] *Gutiérrez Vázquez v. Hernández*, 172 DPR 232, 245 (2007).

[31] *Otero v. Toyota*, supra.

[32] *García Reyes v. Cruz Auto Corp.*, supra, 894.

[33] *Asoc. Vec. de H. San Jorge v. U. Med. Corp.*, 150 DPR 70, 75-76 (2000).

[34] *Rivera v. A & C Development Corp.*, 144 DPR 450, 461 (1997).

[35] *Federation Des Ind. v. Ebel*, 172 DPR 615, 648 (2007); *López Borges v. Adm. Corrección*, 185 DPR 603, 626 (2012).

[36] *Cruz v. Administración*, 164 DPR 341, 357 (2005).

[37] *Super Asphalt v. AFI y otro*, 206 DPR 803, 820 (2021); *Caribbean Communications v. Pol. de P.R.,* 176 DPR 978, 994 (2009).

tradicional y el requerimiento de propuesta (*request for proposal*).[38] Los antedichos procesos se utilizan con el propósito primordial de proteger el erario del estado, "mediante el acceso a la construcción de obras públicas y la adquisición de servicios de calidad para el Gobierno al mejor precio posible".[39] Además, con ellos, se pretende evitar el dispendio, el favoritismo, la corrupción y el descuido al otorgar contratos y minimizar el riesgo de incumplimiento. Ahora bien, para lograr lo anterior, los entes estatales y municipales deben procurar la pureza, eficiencia y probidad en los procedimientos, y promover la libre competencia entre el mayor número posible de postores. [40]

A pesar de que en Puerto Rico no existe legislación que regule los procedimientos de subasta, la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico[41] rige las etapas de reconsideración y revisión de judicial.[42] Sin embargo, dado a que los municipios están expresamente excluidos de la definición de agencia, no les aplican las disposiciones de la aludida ley.[43] A tales efectos, los procedimientos de subasta están regulados por el Código Municipal de Puerto Rico (en adelante, Código Municipal).[44] El referido código derogó la Ley de Municipios Autónomos de Puerto Rico[45], y se aprobó con el fin de integrar, organizar y actualizar las leyes que disponen sobre la organización, administración y funcionamiento de los municipios.[46]

---

[38] *Super Asphalt v. AFI y otro*, supra, 820-821; *PR Eco Park et al. v. Mun. de Yauco*, 202 DPR 525, 531 (2019).
[39] *Super Asphalt v. AFI y otro*, supra, 821; *Caribbean Communications v. Pol. de P.R.,* supra, 994.
[40] *PR Eco Park et al. v. Mun. de Yauco*, supra, 531; *Caribbean Communications v. Pol. de P.R.,* supra, 994.
[41] Ley Núm. 38- 2017, 3 LPRA sec. 960 *et seq.*
[42] *Super Asphalt v. AFI y otro*, supra, 821; *PR Eco Park et al. v. Mun. de Yauco*, supra, 533; *Caribbean Communications v. Pol. de P.R.,* supra, 993.
[43] *PR Eco Park et al. v. Mun. de Yauco*, supra, 533.
[44] Ley Núm. 107 de 13 de agosto de 2020, 21 LPRA sec. 7011 *et seq.*
[45] Ley Núm. 81 de 30 de agosto de 1991, 21 LPRA sec. 4001 nt. *et seq.* (derogada).
[46] Art. 1.002 de la Ley Núm. 107, *supra,* 21 LPRA sec. 7002.

El aludido cuerpo normativo, dispone que los municipios cumplirán con el proceso de subasta pública, cuando se trate de:

(a) Las compras de materiales, equipo, comestibles, medicinas y otros suministros de igual o similar naturaleza, uso o características que excedan de cien mil (100,000) dólares.

(b) Toda obra de construcción o mejora pública por contrato que exceda de doscientos mil (200,000) dólares.

(c) Cualquier venta o arrendamiento de propiedad mueble e inmueble [...].

[...].[47]

Para el antedicho proceso, todo municipio deberá constituir una Junta de Subastas que contará con cinco (5) miembros, de los cuales cuatro (4) deberán ser funcionarios del municipio, nombrados por el Alcalde y confirmados por la legislatura municipal.[48] Cuando el municipio celebre una subasta con el fin de realizar compras, una construcción o adquirir suministros de servicios, la Junta de Subastas debe adjudicar la misma a favor del *Postor Más Bajo*. Ahora bien, la adjudicación de la subasta al licitador con la oferta más baja no opera de manera automática, la Junta de Subastas deberá tomar en consideración: (i) que las propuestas sean conforme a las especificaciones; (ii) los términos de entrega; (iii) la habilidad del postor para realizar y cumplir con el contrato; (iv) la responsabilidad económica del licitador; (v) su reputación e integridad comercial; (vi) la calidad del equipo, producto o servicio, y (vii) cualesquiera otras condiciones que se hayan incluido en el pliego de subasta.[49]

No obstante lo anterior, el Código Municipal permite a la Junta de Subastas seleccionar la oferta de un postor que no sea el más bajo, si con ello beneficia el interés público. Sin embargo,

---

[47] Art. 2.035 (a), (b) y (c), de la Ley Núm. 107, *supra*, 21 LPRA sec. 7211.
[48] *Íd.,* Art. 2.038, 21 LPRA sec. 7214.
[49] Art. 2.040 de la Ley Núm. 107, *supra*, 21 LPRA sec. 7216.

deberá acreditar por escrito el beneficio público de tal adjudicación.[50]

El Código Municipal, igualmente, exige que todo municipio establezca un reglamento que rija los procesos de subasta y establezca las condiciones que requerirá el municipio para la adquisición de servicios, equipos y suministros.[51]

## C. Reglamento para la Administración Municipal

Por su parte, el Reglamento para la Administración Pública[52], se adoptó en virtud del Capítulo 19 de la derogada Ley de Municipios Autónomos y por mandato de la Sección 3.2 de la anterior Ley de Procedimiento Administrativo Uniforme[53]. Su propósito es establecer normas y guías administrativas para promover la eficiencia, uniformidad y un buen gobierno municipal.[54]

Con relación a las subastas municipales, este cuerpo normativo establece que las mismas deben adjudicarse al ". . . postor responsable cuya oferta sea la más ventajosa al Gobierno Municipal, considerando el precio y las especificaciones, términos y estipulaciones requeridas"[55]. A tales efectos, define al licitador responsable como aquel que:

> (1) Tiene recursos financieros adecuados para cumplir su obligación o la habilidad de obtener tales recursos.
>
> (2) Es capaz de cumplir con los términos requeridos o propuestos de entrega, según estipulados o requeridos.
>
> (3) Tiene un historial de cumplimiento satisfactorio.
>
> (4) Tiene un historial satisfactorio de integridad y ética comercial.
>
> (5) Tiene la organización, experiencia, contabilidad y controles operacionales y destrezas técnicas necesarias para cumplir sus obligaciones.

---

[50] Art. 2.040 de la Ley Núm. 107, supra.
[51] *Íd.,* Art. 2.035 (e), 21 LPRA sec. 7211.
[52] Reglamento Núm. 8873 de 19 de diciembre de 2016.
[53] Ley Núm. 170 del 12 de agosto de 1991, 3 LPRA sec. 2101 nt., ed. 2011 *et seq.* (derogada).
[54] Cap. I, sec. 3 del Reglamento Núm. 8873, *supra.*
[55] *Íd.,* Cap. VIII Parte I, sec. 1.

(6) Tiene equipo técnico y facilidades necesarias, o la habilidad de obtener tal equipo y facilidades.

(7) Está de otra forma cualificado y sea elegible para recibir una adjudicación de conformidad con las leyes y reglamentos aplicables.

(8) Cualquier otro requerimiento impuesto por el municipio para considerarlo como "licitador responsable".[56]

A su vez, el referido reglamento advierte que, cuando la Junta de Subastas determine cuales son las ofertas susceptibles de ser consideradas para la adjudicación, deberá evaluar, en primer lugar, aquella cuyo precio sea el más bajo.[57] Por otro lado, detalla que cuando la Junta de Subastas adjudique una subasta de adquisición, construcción y suministros de servicios no profesionales deberá hacerlo en favor del licitador que tenga un buen historial de capacidad y que reúna lo siguiente:

a) que cumpla con los requisitos y condiciones de los pliegos de especificaciones;

b) que sea la más baja en precio o que[,] aunque no sea la más baja en precio, la calidad y/o garantías ofrecidas superan las demás ofertas o se justifique el beneficio de interés público de esa adjudicación.[58]

### D. **Reglamento de Subastas y Solicitud de Propuestas del Municipio Autónomo de San Juan**

Por último, subrayamos que el Reglamento de Subastas y Solicitud de Propuestas del Municipio Autónomo de San Juan (en adelante, Reglamento de Subastas)[59] fue promulgado con el fin de instituir los procedimientos a seguir en toda subasta pública o solicitud de propuesta celebrada por el Municipio. [60]

---

[56] Cap. VIII Parte I, sec. 5. del Reglamento Núm. 8873, *supra.*

[57] *Íd.*, Cap. VIII Parte II, sec. 10.

[58] *Íd.*, Cap. VIII Parte II, sec. 11 (1).

[59] Este Reglamento derogó el anterior Reglamento de Subastas del Municipio de San Juan, el cual fue aprobado el 6 de mayo de 1999, mediante la Orden Ejecutiva Número 44, Serie 1998-1999.

[60] Art. 23.3, sec. 3.1 del Reglamento de Subastas y Solicitud de Propuestas del Municipio Autónomo de San Juan (Reglamento de Subastas), Cap. XXIII, en *Código administrativo del Municipio de San Juan*, Ordenanza Núm. 23, Serie 2001-02, rev. 1 de febrero de 2024, Cap. XXIII, pág. 190.

En lo pertinente al caso del título, el aludido reglamento define al *Postor Más Bajo,* no solo como el licitador que presenta la oferta más económica, si no, también, como aquel que:

(1) [...] [C]umple con los requisitos y condiciones de los pliegos de subasta o solicitud de propuestas;

(2) Su oferta, proposición o propuesta es conforme a las especificaciones y los términos de entrega;

(3) Tiene la habilidad para realizar y cumplir con el acuerdo o contrato;

(4) Tiene recursos financieros adecuados para cumplir su obligación o la habilidad de obtener tales recursos;

(5) Es capaz de asumir con los términos requeridos o propuestas de entrega, según estipulados o requeridos;

(6) Tiene un historial de cumplimiento satisfactorio;

(7) Tiene un historial satisfactorio de integridad, buena reputación y ética comercial;

(8) Ofrece la mejor calidad en el equipo, producto o servicio ofrecido o propuesto;

(9) Tiene la organización, experiencia, contabilidad, controles operacionales y destrezas técnicas necesarias para cumplir sus obligaciones;

(10) Tiene equipo técnico y facilidades necesarias, o la habilidad de obtener tal equipo y facilidades;

(11) Tiene un buen historial de capacidad y cumplimiento;

(12) Está de otra forma cualificado y es elegible para recibir una adjudicación de conformidad con las leyes y reglamentos aplicables; y

(13) Cumple con cualesquiera otras condiciones que se hayan incluido en el pliego de subasta o solicitud de propuestas.[61]

De otra parte, el referido cuerpo reglamentario establece que el criterio principal para la adjudicación de una subasta será el precio ofrecido y otros factores relacionados al precio.[62] A esos fines, conforme al referido reglamento, la Junta de Subasta tiene la

---

[61] *Íd.,* Art. 23.7, sec. 7.1 (57).
[62] Art. 23.7, sec. 7.1 (73) del Reglamento de Subastas, *supra.*

facultad de obviar cualquiera de las condiciones generales o especiales de una subasta, si con ello beneficia al interés público.[63] Igualmente, podrá aceptar o rechazar cualquiera de las propuestas presentadas, y adjudicar la subasta bajo las condiciones más favorables a los intereses del municipio.[64] Además, podrá rechazar una oferta si considera, entre otras cosas, que el licitador carece de responsabilidad o la calidad de los suministros no se ajusta a los requerimientos indicados en los pliegos.[65]

## III

En el recurso ante nos, Master Roofing solicita la revisión y revocación de la adjudicación de una Subasta emitida por la Junta de Subastas del Municipio de San Juan. El recurrente nos invita a concluir que fue un error que amerita la revocación de la determinación de la Junta de Subastas, el haber adjudicado la *buena pro* a All Green. Lo anterior, fundamentado en que: (i) el recurrente era el postor más bajo y con más experiencia; (ii) All Green no contaba con experiencia en impermeabilización de techos, y en que (iii) la Junta de Subastas incidió al concluir que no pudo analizar la capacidad financiera del recurrente porque tenía solo informes financieros compilados cuando contaba con más de un millón de dólares en líneas de crédito.

Tras juzgar que el *primer* y *tercer* error esgrimido se encuentran íntimamente relacionados, procederemos a discutirlos en conjunto. En su escrito de revisión, el recurrente nos plantea que la Junta de Subastas incidió al excluirlo de la buena pro cuando era el postor más bajo y con más experiencia. Además, arguye que la Junta de Subastas erró al concluir que no pudo analizar su capacidad financiera por solo tener informes financieros

---

[63] Art. 23.11, sec.11.1 (t) del Reglamento de Subastas, *supra.*
[64] *Íd.,* sec. 11.1 (u).
[65] *Íd.,* sec. 11.1 (d)

compilados, empero, alegadamente, tenía más de un millón de dólares en líneas de crédito.

Según reseñamos, al ejercer nuestra facultad revisora, debemos conceder una gran deferencia a las decisiones emitidas por los organismos administrativo, puesto que ostentan vasta experiencia y conocimiento en los asuntos que le han sido encomendados.[66] Por ello, si del análisis realizado se desprende que la interpretación que hace una agencia resulta razonable, debemos abstenernos de intervenir.[67] Ahora bien, se justificará nuestra intervención cuando: (i) la decisión no esté basada en evidencia sustancial; (ii) la agencia haya errado en la aplicación de la ley; (iii) su actuación resulte ser arbitraria, irrazonable o ilegal, y cuando (iv) la actuación administrativa lesiona derechos constitucionales fundamentales.[68]

En virtud de lo antes expuesto, y luego de un minucioso estudio de la totalidad del expediente ante nos, hemos acordado no intervenir en cuanto al *primer* y *el tercer* error planteado en el presente recurso. Elaboramos. A pesar de que el recurrente presentó la oferta más baja, puntualizamos que el Código Municipal y el Reglamento de Subastas son enfáticos en que el *Postor Más Bajo*, no es sencillamente quien presente la oferta más económica, si no quien, a su vez, presenta una propuesta según las especificaciones y cumple con los requisitos y condiciones de los pliegos de la subasta, entre otras cosas. Igualmente, el aludido reglamento le confiere a la Junta de Subastas del Municipio la facultad de rechazar cualquiera de las propuestas presentadas, y adjudicar la

---

[66] *Rolón Martínez v. Caldero López*, supra; *Asoc. Fcias. v. Caribe Specialty et al. II.*, supra.

[67] *The Sembler Co. v. Mun. de Carolina*, supra, 822, citando a *Empresas Ferrer v. ARPe*, supra.

[68] *Cruz v. Administración*, supra, 357.

subasta bajo las condiciones más favorables a los intereses del Municipio.[69]

Luego de revisar el expediente en su totalidad, incluyendo el expediente administrativo de la subasta y las posiciones de las partes, se desprende que el recurrente incumplió con la Sección IV(G)(a) de las *Instrucciones a Licitadores,* la cual requería que los licitadores presentaran como parte de su propuesta la documentación siguiente:

a) Financial Statements- **Audited or reviewed** financial statements for the last two years of operations **issued by a Certified Public Accountant (CPA) and prepared in accordance with US Generally Accepted Accounting Principles (US GAAP).** The financial statements must include Balance Sheet, Statement of Operations, Statement of Cash Flows, and notes to the financial statements.[70]

Surge de la propuesta presentada por el recurrente que los estados financieros incluidos en la misma eran **compilados, y no auditados o revisados**, según requerían las mencionadas instrucciones. Sobre este particular, acentuamos que en un documento intitulado *Independent Accountant's Complilation Report,* el contador público autorizado Javier M. Aguiló Lang, indica lo siguiente sobre los estados financieros de Master Roofing:

I did not **audit or review the financial statements** nor was I required to perform any procedure to verify the accuracy or completeness of the information provided by management. Accordingly, I do not express an opinion, a conclusion, nor provide any form of assurance on these financial statements.[71]

Además, precisa señalar que, en el proceso de evaluación de las ofertas recibidas, el Departamento observó que el recurrente no había entregado sus últimos dos (2) estados financieros **revisados o auditados,** y le requirió que entregara los mismos. Sin embargo,

---

[69] Art. 23.11, sec. 11.1 (u) del Reglamento de Subastas, *supra.*
[70] Véase, Apéndice del recurso, a la pág. 481. (Énfasis nuestro).
[71] *Íd.,* a las págs. 34 y 42. (Énfasis nuestro).

según se desprende de lo detallado anteriormente, los estados financieros entregados por el recurrente no cumplieron con las especificaciones.

Cabe señalar, además, que, aunque el recurrente arguye que, probó su capacidad financiera al demostrar que tenía más de un millón de dólares en líneas de crédito, no surge de los pliegos de la subasta que este hecho lo relevara de cumplir con los requerimientos esbozados en las *Instrucciones a Licitadores*. Más aún cuando la Sección IV(G)(b) subraya que no serán aceptadas las líneas de crédito emitidas **más de treinta (30) días antes a la fecha de apertura de la subasta**.[72] Se desprende del expediente que las líneas de crédito mencionadas por el recurrente fueron **emitidas el 7 junio de 2023** y **la apertura de la subasta se celebró el 26 de septiembre de 2023**; quiérase decir que las referidas líneas de crédito fueron emitidas aproximadamente **noventa (90) días antes de celebrarse el acto de apertura de la subasta**.[73]

Por lo antes expuesto, coincidimos que la decisión de la Junta de Subastas, de excluir a Master Roofing de la adjudicación de la subasta que nos ocupa, fue razonable ante las circunstancias y las leyes y reglamentos aplicables. Así, pues, concluimos que no se cometió el *primer* ni el *tercer* error esgrimido por el recurrente.

Por último, pasemos al *segundo* error, en el cual el recurrente nos invita a concluir que el postor agraciado All Green no contaba con experiencia en impermeabilización de techos.

Primeramente, acentuamos que, conforme al Reglamento de Subastas y el Reglamento Núm. 8873, el criterio principal para la adjudicación de una subasta es el precio ofrecido, y no la experiencia con la que cuenta el licitador.[74] Además, conforme esbozamos, el

---

[72] Apéndice del recurso, a las págs. 482.
[73] *Íd.,* a las págs. 119-118.
[74] Art. 23.7, sec. 7.1 (73) del Reglamento de Subastas, *supra*; *Íd.*, Cap. VIII Parte II, sec. 10 del Reglamento Núm. 8873, *supra.*

Reglamento de Subastas permite que la Junta de Subastas prescinda de cualquiera de las condiciones generales o especiales de una subasta, si con ello beneficia al interés público.[75] Al comparar la oferta de All Green con las restantes dos ofertas, esta era la más económica. A tenor, resulta necesario apuntalar que el Departamento, al emitir sus recomendaciones, dispuso que la oferta Perfect Integrated Solutions estaba veintinueve por ciento (29%) por encima del estimado del costo, por lo que no la consideró razonable. En cuanto a Reyes Contractor Group, el Departamento detalló que entregó estados financieros incompletos para el año 2022, y su oferta estaba sesenta y nueve por ciento (69%) por encima del estimado del costo. Por lo cual, calificó la oferta como una irrazonablemente alta.

Ahora bien, no podemos ignorar que las *Instrucciones a Licitadores* exigían que los postores tuviesen, como mínimo, tres (3) años de experiencia en la industria de la construcción y que hubiesen realizado al menos dos (2) proyectos similares en tipo, complejidad y alcance.[76] Sin embargo, entendemos que los anteriores requisitos no eran de estricto cumplimiento, puesto que las referidas instrucciones enfatizan: "[t]hese documents **are not minimun elegibility requirements**. However, the bid board, **may disqualify** any bidder that fails to comply with the information requested." [77]

No obstante lo anterior, surge de la propuesta presentada por All Green, que este tenía once (11) años de experiencia en la industria de la construcción.[78] Durante este tiempo realizó una variedad de proyectos tanto para el gobierno, como entidades privadas; entre ellos, trabajos para la Guardia Nacional de Puerto

---

[75] Art. 23.11, sec.11.1 (t) del Reglamento de Subastas, *supra*.
[76] Apéndice del recurso, a la pág. 479.
[77] *Íd.*
[78] Expediente administrativo de la subasta, Propuesta de All Green, Statement of Bidder Qualifications a la pág. 1.

Rico para remodelar y expandir el Museo de Salinas, los cuales incluyeron sellado de techo.[79] Igualmente, la compañía se encargó del sellado de techo de siete (7) escuelas en los Municipios de Carolina y San Juan, en virtud de un contrato con la Autoridad para el Financiamiento de la Infraestructura de Puerto Rico (AFI).[80] Surge, además, de la aludida propuesta que All Green cuenta con una certificación de Danosa, para la compra e instalación de los materiales necesarios para el proyecto objeto de la Subasta que nos ocupa.[81]

En vista de lo esbozado, justipreciamos que el postor agraciado si contaba con la experiencia para realizar la impermeabilización de los techos del Centro de Diagnóstico y Tratamiento José S. Belaval, *ergo*, el *segundo* error planteado tampoco se cometió.

IV

Por los fundamentos que anteceden, se *confirma* la *Determinación Final* recurrida en la cual se adjudicó la Subasta.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[79] Expediente administrativo de la subasta, Propuesta de All Green, Perfil de la Compañía, a las págs. 18-19.
[80] *Íd.,* Lista de Trabajos Realizados para el Gobierno, a la pág. 4.
[81] *Íd.,* Carta de Certificación de Danosa, a la pág. 1.